IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH W. DEL SIGNORE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | No. 20 C 4019 |
| v. | ) | |
| | ) | Judge Jorge Alonso |
| **NOKIA OF AMERICA CORPORATION, CHRISTY** | ) | |
| **GLIORI, and MANAGERS JOHN DOE 1-50,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION & ORDER**

In this whistleblower retaliation case, plaintiff, Kenneth W. Del Signore, claims that his former employer, Nokia of America Corporation ("Nokia"), terminated him and subjected him to other retaliatory treatment for alleging that Nokia was colluding to fraudulently overbill a federal subsidy fund. Defendants, Nokia and one of its employees, Christy Gliori, move for summary judgment, contending that plaintiff has not adduced sufficient evidence to support his retaliation claims. For the following reasons, the Court grants the motion.

I.  **Local Rule 56.1**

Northern District of Illinois Local Rule 56.1 ("LR 56.1") requires a party moving for summary judgment to file and serve a "statement of material facts," N.D. Ill. LR 56.1(a)(2), consisting of concise numbered paragraphs, "supported by citation to . . . specific evidentiary material," N.D. Ill. LR 56.1(d). The party opposing the motion for summary judgment is required to file and serve a response, consisting of numbered paragraphs corresponding to each paragraph of the statement of material facts. N.D. Ill. LR. 56.1(b)(2), (e)(1). To the extent the opposing party

disputes any of the movant's asserted material facts, the response must "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." N.D. Ill. LR. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* Additionally, if the opposing party "wishes to assert facts not set forth in the LR 56.1(a)(2) statement or the LR 56.1(b)(2) response," the opposing party may file a "statement of additional material facts" in the same form as the movant's LR 56.1(a)(2) statement of material facts, LR 56.1(b)(3), and the movant may respond in the same manner prescribed for the opposing party's LR 56.1(b)(2) response, *see* LR 56.1(c)(2).

District courts are entitled to "require strict compliance with local summary-judgment rules." *McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Lipinski v. Castaneda*, 830 F. App'x 770, 771 (7th Cir. 2020) (affirming district court's decision deeming moving party's facts admitted under Local Rule 56.1 where non-moving party's response purported to "disput[e] several facts," but "cited no supporting evidence and did not offer facts of [its] own to show a genuine dispute"); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial.").

In his Local Rule 56.1(b)(2) response, plaintiff sometimes purports to deny facts asserted by defendant without controverting them with citation to admissible evidence. Instead, he either cites evidence that does not controvert the cited fact or cites no evidence at all. (*See, e.g.*, Pl.'s LR

56.1 Resp. ¶¶ 35-36.) Accordingly, the Court deems such facts admitted to the extent they are supported by citation to record evidence.

Additionally, plaintiff purports to dispute certain facts by objecting based on "hearsay" or because he lacks "personal knowledge." (*See, e.g.*, *id.* ¶¶ 38-39, 48, 52.) First, the hearsay objections lack merit because they are made in response to evidence that defendants offer for its effect on the listener or other proper, non-hearsay purposes, rather than the truth of the matter asserted. And in any case, at the summary judgment stage evidence need only be admissible in substance rather than form, *see Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016), and even if there are any hearsay problems here, defendants are likely to be able to cure these problems at trial. As for plaintiff's lack-of-personal-knowledge objections, these are not appropriate at the summary judgment stage, where the parties have to go beyond the pleadings and cite evidence. It was plaintiff's responsibility to take discovery to develop evidence material to his claims, so his lack of personal knowledge of whether an asserted material fact is true does not suffice to genuinely dispute the fact for purposes of the present motion for summary judgment. If it were otherwise, parties could survive summary judgment by making general denials, but, as the Court has explained above, such denials do not suffice.

II. **Background**

The following facts are taken from the parties' Local Rule 56.1 statements and responses. Unless otherwise noted, these facts are either undisputed or presented from the point of view of plaintiff, the non-moving party.

Plaintiff worked for Nokia as a Lab Infrastructure Engineer. Nokia makes equipment that Verizon Communications, Inc., a large telecommunications company, uses in its cell phone networks. As early as 2009, plaintiff noticed an anomaly in the performance of Verizon's wireless

3

network, which resulted in an excess of roaming operations. Verizon relied on smartphone-based measurement systems developed by a third-party company known as RootMetrics, but plaintiff observed that, due to a flaw in its testing methodology, RootMetrics inflated the performance of Verizon's network to show more activity than on other large telecommunications networks. In the fall of 2017, plaintiff proposed to create an improved smartphone measurement system for the Nokia Incubator program, which supports the development of new business ideas from within the company. Plaintiff was initially told that his idea had the potential to be lucrative for Nokia and that it had been tentatively approved for funding in January 2018. However, at a February 2018 meeting, he sensed that some of the Nokia personnel who had initially supported the project now seemed skeptical of it, with at least one person suggesting that the project's business plan needed more work. After a few months without any progress, plaintiff perceived that no one else at Nokia was interested in actively pursuing the project any longer, and he came to believe that the project had been canceled.

Upset by this turn of events and suffering from "work-related stress," plaintiff decided to take short-term disability leave in May 2018. (Pl.'s Resp. to Defs.' Local Rule 56.1 Stmt ¶ 7, ECF No. 217) (hereafter, "Pl.'s LR 56.1 Resp."). On May 8, 2018, he reached out to Nokia Disability Advocate Christy Gliori for advice on how to proceed. Gliori advised plaintiff to seek treatment from a psychiatrist so he could establish that he was unable to perform his essential job functions, as Nokia's short-term disability policy required. (*Id.* ¶ 3; Def.'s LR 56.1 Stmt. Ex. 2, Aug. 26, 2022 Gliori Decl., Ex. C, NOKIA_000093, ECF No. 209-5 at 123). Plaintiff sought psychiatric care from Conventions Psychiatry and Counseling, where he was treated by Kara Mulligan, PA-C.[1]

---

[1] Ms. Mulligan is sometimes identified in the record as a nurse practitioner, which is apparently

4

On May 16, 2018, plaintiff filed an internal ethics complaint, in which he explained that he had been involved in developing a "new device application that would provide better and more detailed analytics on UE/user performance" than RootMetrics, but the project had been "delayed and/or unofficially cancelled" for "unknown reasons," after six months of development. (Def.'s LR 56.1 Stmt. Ex. 1, Pl.'s 1st Dep. Ex. 4 at 2, ECF No. 209-3 at 109.) Plaintiff stated that the abrupt, unexplained delay or tacit cancellation left him with "suspicions . . . that there might be collusion between Nokia and a carrier service provider" such as Verizon, to whatever extent both companies were benefiting from the inflated measurements performed by RootMetrics under the status quo. (*Id.*, *see* Pl.'s LR 56.1 Resp. ¶ 14.)

As the summer of 2018 wore on, plaintiff came to believe that Nokia was not only hoping to hide the truth about RootMetrics's mismeasurements but that it was profiting from confusion about mismeasurements of telecommunications activity on Verizon's network by using the inflated activity to overbill the Universal Service Fund ("USF"). The USF is a fund established by the federal government to promote universal access to telecommunications services, particularly in remote or rural areas.[2] Plaintiff sent several emails to Nokia employees about these issues. Gliori contacted plaintiff to advise him that his ethics complaint was closed[3] and he should stop sending these emails, as Nokia's short-term disability benefits were available only to employees who were unable to perform their job duties, and performing work-related activity such as sending emails

---

incorrect. The biographical information posted on her employer's website identifies her as a physician's assistant. https://www.conventionspc.com/providers/kara-mulligan/. The Court assumes that the distinction makes no difference for purposes of this case.
[2] https://www.fcc.gov/general/universal-service.
[3] Shortly after the filing of plaintiff's internal ethics complaint, Nokia's Ethics & Compliance Business Integrity Group launched an internal investigation into the matter, and the investigators concluded that the allegations lacked merit.

about work issues could jeopardize his status as disabled for purposes of those benefits.[4] Plaintiff's email and electronic badge access were disabled in September 2018, after he had sent a number of emails and made an in-person visit to the Nokia office, all while still on short-term disability leave.

On September 16, 2018, plaintiff filed a second internal ethics complaint, in which he set forth his theory that Nokia and Verizon are colluding to exploit inaccurate network performance measurements in order to overbill the USF. Nokia assigned Joe Alesia, an in-house lawyer for the company, to investigate the complaint. Alesia spoke with individuals who investigated plaintiff's previous complaint, and he reviewed the record of that investigation. He found that the first investigation was thorough, he identified no avenues for further investigation, and he concluded that the complaint lacked merit.

On September 26, 2018, plaintiff filed a whistleblower complaint with the Occupational Safety and Health Administration ("OSHA").[5] Following the dismissal of that complaint, he filed an administrative action with the Department of Labor.

Nokia's short-term disability policy required plaintiff, prior to the expiration of his benefits on November 11, 2018, to return medical documentation showing either that he was fit to return to work or that he was improving enough to warrant a disability leave of absence while his recovery continued. Otherwise, he risked terminated. In September 2018, Gliori sought an update on plaintiff's medical status from Mulligan. In a September 18, 2018 phone call, Mulligan told Gliori

---

[4] Plaintiff does not recall Gliori offering this rationale, but he does not deny that she contacted him to advise him to stop sending emails.

[5] "Congress has assigned whistleblower protection largely to the Department of Labor (DOL), which administers some 20 United States Code incorporated whistleblower protection provisions." *Lawson v. FMR LLC*, 571 U.S. 429, 435 (2014). "The Secretary [of Labor] has delegated investigatory and initial adjudicatory responsibility over claims under a number of these provisions," including those of the Sarbanes-Oxley Act, to OSHA. *Id.* (citing 78 Fed. Reg. 3918 (2013)).

that plaintiff was suffering from serious mental health issues that made him "psychotic and delusional," he was not taking the medication she recommended for him, and he was not fit to work in the condition he was in at his last appointment on August 23, 2018. (Def.'s LR 56.1 Stmt. Ex. 2, Aug. 26, 2022 Gliori Decl., Ex. A, Jan. 13, 2020 Gliori Decl. Ex. 2, ECF No. 209-5 at 60.) Gliori memorialized this conversation by summarizing it in Nokia's "QHS" system, a database Nokia used to maintain notes on the status of employees out on disability leave.

On October 18, 2018, Gliori sent plaintiff a letter to inform him that she had received no medical documentation to establish that he was fit to return to work or might benefit from a disability leave of absence. The letter warned plaintiff that his short-term disability benefits would expire and he would be terminated from the company on November 11, 2018, if Nokia did not receive information from a medical provider to indicate that plaintiff was fit to return to work or might be soon.

On October 26, 2018, Mulligan submitted a "Return to Work Assessment" form to Nokia. Mulligan opined that plaintiff was not fit to return to work due to "ongoing emotional distress" which limited his ability to "focus on tasks," and she did not know how long these restrictions might persist. (Def.'s LR 56.1 Stmt. Ex. 2, Aug. 26, 2022 Gliori Decl., Ex. A, Jan. 13, 2020 Gliori Decl. Ex. 4, ECF No. 209-5 at 84.)

Lacking more specific information on plaintiff's medical condition, Gliori took steps to set up a two-day independent medical evaluation for plaintiff on November 7 and November 13, 2018. Gliori also offered to seek a short disability leave of absence for plaintiff while the results were pending. However, on November 2, 2018, after some back-and-forth, plaintiff confirmed via email that he was not willing to attend the appointments Gliori had set up for him. Plaintiff was terminated on November 12, 2018, following the exhaustion of his short-term disability benefits.

Plaintiff continued to litigate his administrative action after his employment ended, and he believes he was harassed by Nokia during the pendency of the action. He asserts that someone resembling Joe Alesia or Neil Bernstein, plaintiff's former supervisor, sat outside his house in a black car. He believes he received staged calls from recruiters to humiliate him, and that an in-house counsel for Nokia deleted his LinkedIn messages. He accuses Gliori of swearing a false affidavit, which Nokia submitted in the administrative action, about her communication with Mulligan during September 2018. He also accuses defendants' law firm of wrongdoing in this litigation and in threatening to initiate state-court litigation against plaintiff for making frivolous claims against Gliori.

An administrative law judge granted summary judgment for defendant in the administrative action in June 2020. This suit followed. In the operative second amended complaint, plaintiff claims that Nokia retaliated against him for complaining about Nokia's allegedly fraudulent activity, in violation of the anti-retaliation and whistleblower protection provisions of the False Claims Act, 31 U.S.C. § 3730(h); the Illinois False Claims Act, 740 ILCS 175/4(g), the Sarbanes-Oxley Act, 18 U.S.C. § 1514A; and the Illinois Whistleblower Act, 740 ILCS 174/15. He also asserts the Illinois Whistleblower Act claim against Gliori individually. (*See* Sep. 27, 2021 Order at 3, ECF No. 101.)

### III.     Summary Judgment Standard

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wackett v. City of Beaver Dam*, 642 F.3d 578, 581 (7th Cir. 2011). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Summary judgment is the proverbial put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (internal quotation marks omitted). "To defeat a motion for summary judgment, the party opposing it must make a 'showing sufficient to establish the existence of [any challenged] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893-94 (7th Cir. 2018) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)). The court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

In assessing the evidence at summary judgment, the court must consider the facts in the light most favorable to the non-moving party, giving that party "the benefit of all conflicts in the evidence and reasonable inferences that may be drawn from the evidence," regardless of whether it can "vouch for the objective accuracy of all" the evidence the non-moving party puts forward. *Fish v. GreatBanc Tr. Co.*, 749 F.3d 671, 674 (7th Cir. 2014). Even though district courts must view the non-moving party's evidence in this generous light, it does not follow that they are "required to draw every requested inference; they must only draw reasonable ones that are supported by the record." *Omnicare*, 629 F.3d at 704. "Inferences supported only by speculation or conjecture will not suffice." *Johnson*, 892 F.3d at 894.

## IV.     Substantive Legal Standards

Plaintiff claims that Nokia violated the following federal and state statutes. The whistleblower provision of the Sarbanes-Oxley Act ("SOX") states as follows:

> **(a) Whistleblower Protection for Employees of Publicly Traded Companies.**--No company . . . may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee--
> **(1)** to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes [a violation of certain anti-fraud statutes[6]], when the information or assistance is provided to or the investigation is conducted by--
>> **(A)** a Federal regulatory or law enforcement agency;
>> **(B)** any Member of Congress or any committee of Congress; or
>> **(C)** a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or
>
> **(2)** to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged [fraud].

18 U.S.C. § 1514A.

The False Claims Act ("FCA") provides that anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" by the government, or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," is liable to the government for civil penalties and treble damages. 31 U.S.C. § 3729(a)(1)(A) and (B). The Act's retaliation provision provides as follows:

> **(h) Relief from retaliatory actions.--**
> **(1) In general.**--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment

---

[6] One of the enumerated statutes is the wire fraud statute, 18 U.S.C. § 1343, which plaintiff claims defendant violated by boosting certain network activity in order to inflate Universal Service Fund payments.

10

> because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730. The pertinent language of the Illinois False Claims Act ("IFCA") is essentially identical. 740 ILCS 175/3(a)(1)(A),(B); 740 ILCS 175/4(g); *see Edwards v. Generations at Riverview, LLC*, No. 120CV01086JESJEH, 2022 WL 992733, at *4 (C.D. Ill. Apr. 1, 2022) (treating retaliation claims under FCA and IFCA claims as identical).

Finally, plaintiff claims that defendants violated the Illinois Whistleblower Act ("IWA"), which provides that "[a]n employer may not retaliate against an employee who discloses information in a court, an administrative hearing, . . . or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a).

### V. Analysis

Although the statutes governing them are not identical, plaintiff's retaliation claims all share the same basic elements. Plaintiff must show that he engaged in activity that was protected by these statutes; he suffered an adverse employment action; and the protected activity caused defendants to take the adverse action. Defendants argue that they are entitled to summary judgment because (a) plaintiff cannot establish that he engaged in any protected activity; (b) most of the actions plaintiff complains of were not materially adverse or otherwise do not satisfy the requirements of the relevant statutory provisions; and (c) plaintiff cannot establish that his protected activity was the cause of any adverse action he suffered.

#### A. Protected Activity

Defendants argue that, although plaintiff complained that Nokia was engaging in an unlawful and fraudulent business practice by taking advantage of mismeasured network activity,

11

his complaints do not amount to protected activity because they lacked an objectively reasonable basis. *See Harp v. Charter Commc'ns, Inc.*, 558 F.3d 722, 723 (7th Cir. 2009) (under SOX, a whistleblowing employee's belief in the unlawfulness of his employer's actions "must be objectively reasonable"); *Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479-80 (7th Cir. 2004) (under FCA, employee's whistleblowing is only protected activity if "a reasonable employee in the same or similar circumstances might [also] believe" that the employer is defrauding the government); 740 ILCS 174/15(a) (whistleblowing employee must have "reasonable cause to believe" that employer's actions are unlawful). According to defendants, plaintiff provides no evidence that Nokia was defrauding the government or anyone else other than his own testimony. Defendants argue that plaintiff's own self-serving testimony is not enough to survive summary judgment.

It is true that plaintiff has adduced little or no evidence of Nokia's wrongdoing apart than his own testimony, but that wrongdoing itself is not directly at issue here, and the Court is not convinced that no reasonable juror could possibly find that plaintiff reasonably believed that Nokia's actions were unlawful. At all relevant times plaintiff was a highly educated and well-qualified engineer with long experience in the field. The Court cannot say that a juror who found him credible could not conclude that his theory was at least objectively reasonable. Although plaintiff has not submitted much evidence to substantiate his theory of Nokia's wrongdoing, the issue of the objective reasonableness of the theory is not appropriate for resolution at summary judgment on the present record.

### B. Materially Adverse Action

Defendant argues that plaintiff complains of numerous adverse actions that cannot support his claims because they fall outside the relevant time frame, they did not result in material harm,

there is no evidence they actually occurred, or they were not connected to the terms and conditions of plaintiff's employment.

First, as the Court has already explained in its rulings on defendants' motions to dismiss (*see* Jan. 27, 2021 Order at 7-8, ECF No. 36; Sep. 27, 2021 Order at 3, ECF No. 101), the earliest whistleblowing activity that qualifies for protection under any of the statutes plaintiff has invoked occurred in May 2018, when plaintiff filed his first internal ethics complaint. And the earliest activity that qualifies for protection under the IWA, which protects the "disclos[ure]" of information in a "court," a "hearing," or "other proceeding," did not occur until September 2018, when plaintiff filed his OSHA complaint. Adverse actions that predate protected activity cannot logically be the result of the protected activity, so, to the extent plaintiff addresses incidents that occurred prior to the filing of his first ethics complaint in May 2018, the Court considers them only as background evidence, not as adverse actions that might form an element of his retaliation claims.

Second, the Court agrees with defendants that actionable retaliation does not consist of just any adverse action that may have made plaintiff uncomfortable; the employer's allegedly retaliatory action has to be "materially adverse," which means harmful enough to have "dissuaded a reasonable worker" from engaging in protected activity. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). This standard—developed in the context of Title VII retaliation, but often applied under other retaliation and whistleblowing statutes as well—requires courts to "separate significant from trivial harms," as complaining of an employer's unlawful activity does not entitle employees to protection against the "petty slights and annoyances that often take place at work." *Id.*; *see Lewis v. Wilkie*, 909 F.3d 858, 867-68 (7th Cir. 2018) (citing *Poullard v. McDonald*, 829 F.3d 844, 856-57 (7th Cir. 2016)) (adverse action must

"produce a material injury or harm" in order to be actionable); *Lam v. Springs Window Fashions, LLC*, 37 F.4th 431, 438 (7th Cir. 2022) (applying *Burlington Northern* to FCA retaliation claim and holding that "generic descriptions of hostility are insufficient" to establish that plaintiff was "harassed"); *Halliburton, Inc. v. Admin. Rev. Bd.*, 771 F.3d 254, 260 (5th Cir. 2014) (applying *Burlington Northern* standard to SOX retaliation claim). Under these principles, actions such as staking out plaintiff's house in a black car, staging calls from recruiters, and deleting LinkedIn messages, even if proved, are not materially adverse and therefore insufficient to sustain plaintiff's retaliation claims. Even actions such as cutting off plaintiff's email and badge access during disability leave, warning plaintiff not to perform work activities while on leave, and Gliori's swearing an allegedly false affidavit seem to have resulted in no "material injury or harm" and therefore do not meet the standard for materially adverse actions. Actions such as these, if proved, might serve as "relevant evidence of retaliatory intent behind a more concrete adverse action," *Poullard*, 829 F.3d at 857, but they cannot sustain a retaliation claim on their own.

In his supplemental response brief (ECF No. 231),[7] plaintiff makes much of the affidavit sworn by Gliori and submitted by Nokia in the administrative action. Although the brief is fuzzy on the details, plaintiff appears to believe that Gliori made inconsistent or incorrect statements about her September 18, 2018 phone call with Mulligan and whether the QHS record of the call was redacted before it was submitted in the administrative action. But plaintiff has adduced no admissible evidence other than his own speculation to suggest that anything in the affidavit was false. Of course, plaintiff may disagree with some of the facts in the affidavit or in the QHS records,

---

[7] Plaintiff was represented by counsel when the present motion for summary judgment was filed, but he and his counsel differed over how to respond to the motion. Counsel filed a response brief on plaintiff's behalf, then withdrew from the case. The Court granted plaintiff leave to file a supplemental pro se response brief to assert certain arguments his counsel had declined to raise, particularly as to the Gliori affidavit.

14

but it does not follow that Gliori was lying, as opposed to attempting to faithfully represent what she believed to be true and record what she had been told by Mulligan. Plaintiff has pointed to no admissible evidence that might establish any deceptive intent. And the Court reiterates that, even if there was anything deceptive in Gliori's conduct, the Court fails to see how it is meant to have harmed plaintiff. Plaintiff's claim that defendants obtained his medical records without authorization is similarly unsupported by the undisputed evidence.

Additionally, unlike Title VII's retaliation provision, the retaliation provisions of SOX and the FCA prohibit only discrimination "in the terms and conditions of employment." Defendants argue that any actions that post-date his termination and are unconnected to his employment or future employment prospects are beyond the scope of these provisions. The Court agrees that post-termination actions that are "unrelated to the plaintiff's employment," do not "impinge[] on [his] future employment prospects," and otherwise lack any "nexus to employment" do not satisfy the retaliation provisions at issue in this case. *See Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996). To whatever extent plaintiff challenges certain of defendants' post-termination actions, such as Gliori's submitting the affidavit, defendants' counsel's submitting a motion to dismiss at an unexpected time, and defendants' warnings that plaintiff's continued attempts to assert frivolous claims against Gliori might result in state-court litigation, these post-termination actions lack any demonstrated connection to the terms and conditions of plaintiff's employment. Again, plaintiff focuses particularly on the Gliori affidavit and its representation of the September 18, 2018 conversation between Gliori and Mulligan, but that conversation was immaterial to plaintiff's termination or any other decision related to the terms and conditions of plaintiff's employment, as the Court will discuss further below.

The only alleged actions that arguably meet the standard for material adversity are the disabling of plaintiff's email and badge access (if the Court assumes that plaintiff was harmed by it), his referral for an independent medical examination, and his termination. Therefore, the Court proceeds to consider whether there is sufficient evidence to prove that plaintiff's protected activity may have caused defendants to take any of these actions.

### C. Causation

The causation standards applicable to plaintiff's claims vary. The SOX statute sets forth the most expansive standard, which requires only that an employee demonstrate that "the protected activity was a contributing factor in the unfavorable action," although the employer may still avoid liability if clear and convincing evidence shows that it "'would have taken the same unfavorable personnel action'" even in the absence of the protected activity. *Harp*, 558 F.3d at 723 (quoting *Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008)); *cf. Principe v. Vill. of Melrose Park*, No. 20 CV 1545, 2022 WL 488937, at *13 (N.D. Ill. Feb. 17, 2022) (applying Title VII standard to IWA claim and asking, "'Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?'") (quoting *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021)); *Burke v. Amedisys, Inc.*, No. 17-CV-9232, 2022 WL 3226797, at *14 (N.D. Ill. Aug. 10, 2022) (applying a motivating-factor standard to FCA claim based on *Fanslow*, 384 F.3d at 485, but recognizing that the Seventh Circuit has suggested in more recent cases that a but-for standard may be more appropriate to the statutory language) (citing *Heath v. Indianapolis Fire Dep't*, 889 F.3d 872, 874 (7th Cir. 2018)). The Court agrees with defendants that even under the expansive SOX standard, plaintiff lacks sufficient evidence to demonstrate that his protected activity caused his employer's adverse action

16

against him, and the undisputed facts show that defendants would have taken the same action even in the absence of the protected activity.

Plaintiff has not raised any genuine dispute about the following facts. Plaintiff took short-term disability leave, meaning that he was disabled in the sense that he was unable to perform his essential job functions. However, he continued to send emails about his ethics complaints against his employer while out on leave. Plaintiff's continued contacts with Nokia personnel while out on leave were the reason his email and badge access were disabled, as these contacts were not consistent with Nokia's short-term disability policy. Nokia has shut off email and badge access of other individuals who appeared to be working and ignored directions to stop while out on disability leave.[8] Defendants required plaintiff to provide medical evidence that he was no longer disabled, *i.e.*, he had regained his ability to perform his job functions, before he was allowed to return to work. Neither plaintiff nor any medical provider who treated him submitted any medical documentation to defendants to demonstrate that plaintiff was fit and able to return to work or making progress in that regard.[9] In the absence of any such medical documentation, with plaintiff's short-term disability benefits nearing their expiration date, defendants took steps to obtain it on their own by scheduling an independent medical examination for plaintiff. Mulligan returned a

---

[8] Plaintiff purports to dispute this fact by citing the example of Brett Behrens, another Nokia employee who, plaintiff contends, was allowed access to his laptop while on leave. But plaintiff has not adduced evidence that Mr. Behrens was believed to be performing work while on leave, so there is no reasonable inference to be drawn from his case. See *Nwoke v. Univ. of Chicago Med. Ctr.*, No. 16 C 9153, 2020 WL 1233829, at *14 (N.D. Ill. Mar. 13, 2020) ("In this case, the comparisons plaintiff makes between herself and [certain co-workers] are not useful because 'she has not come forward with evidence that [they] shared a comparable set of failings' with her.") (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008).

[9] Plaintiff purports to dispute this fact by stating that he "did return documentation stating an estimated return to work date" and citing "Plt.' Ex. P." (Pl.'s LR 56.1 Resp. ¶ 50.) But the Court did not find an Exhibit P attached to plaintiff's LR 56.1 response—his exhibits go from Exhibit O (ECF No. 217-14) to Exhibit Q (ECF No. 217-15)—and the Court has not found any other evidence to suggest that plaintiff submitted any such documentation to defendants.

form indicating that her medical opinion was that plaintiff was not fit to return to work and she did not know when he might be. This development highlighted the need for an independent medical examination, but plaintiff refused to attend. Having no evidence that plaintiff was fit to return to work and with plaintiff refusing to cooperate in their efforts to obtain such evidence, Nokia terminated plaintiff. Nokia has set up independent medical examinations for other employees in similar circumstances, and it has terminated other employees for failing to submit any medical documentation of their fitness to return to work following disability leave.

Plaintiff argues that defendant's explanations for its behavior in the above-described events are pretextual. He cites Gliori's admission to plaintiff in an email that independent medical examinations were required only on a "case-by-case" basis, not in every case, and he argues that it is "unclear from the record what exactly were the grounds in this matter" for the independent examination. (Pl.'s Mem. in Opp'n at 8), ECF No. 218.) According to plaintiff, the facts Gliori recorded in the QHS system based on her conversations with Mulligan were inaccurate and therefore an inadequate basis for an independent medical examination or termination. (*Id.*)

But the facts Gliori recorded in the QHS system about her September 2018 conversation with Mulligan were ultimately immaterial to any of the alleged adverse actions. Based on the undisputed facts, it is not "unclear" what the "grounds" were for plaintiff's independent medical examination and termination: defendants had no evidence that plaintiff was fit to return to work or might be in the foreseeable future, and plaintiff did not supply any such evidence or cooperate with their efforts to obtain it.

An employee can demonstrate that the reason for his termination was pretextual by adducing evidence to show that it is "factually baseless" or "insufficient to motivate" the employer's action. *Tibbs v. Admin. Office of the Ill. Courts*, 860 F.3d 502, 506 (7th Cir. 2017)

(internal quotations marks omitted). Based on such evidence, the "employer's explanation for discharging a worker may sometimes be fishy enough to support an inference that the reason must be discriminatory." *Id.* (internal quotations marks omitted). But plaintiff has not come forward with any such evidence here, so there is nothing "fishy" enough about defendants' actions to permit a reasonable juror to infer, in the absence of other evidence casting doubt on them, that the real reason for them was retaliation. *See id.*; *Harden v. Marion Cnty. Sheriff's Dep't*, 799 F.3d 857, 864–65 (7th Cir. 2015); *see also Tibbs*, 860 F.3d at 507 (reasoning that there was no evidence to indicate that the employer's reasons for termination were pretextual rather than honestly believed, particularly after employee "declined to participate in the . . . process"); *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 863 (7th Cir. 2011) (mere speculation that defendant took improper action was insufficient to overcome defendant's reasonable explanation supported by evidence at summary judgment) (citing *Omnicare*, 629 F.3d at 704).

In his counseled response brief, plaintiff focuses on two additional adverse actions: the cancellation of his smartphone network measurement project and the decision by Nokia's long-term disability insurance carrier, MetLife, to deny plaintiff's claim for long-term disability benefits. The Court has already explained that adverse actions taking place prior to plaintiff's protected activity cannot have been caused by the protected activity, and the cancellation of plaintiff's project, if it occurred at all, occurred prior to plaintiff's protected activity in May 2018. Indeed, it was the subject of plaintiff's internal ethics complaint, so it can hardly have been caused by plaintiff's filing the internal ethics complaint. As for the long-term disability decision, plaintiff has not provided any reason why the Court should attribute this decision to defendants, rather than to MetLife, much less adduced any evidence that would permit the Court to do so.

19

Even viewing all the evidence in the light most favorable to plaintiff, no reasonable juror could find in plaintiff's favor. The Court grants summary judgment for defendants.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [207] is granted. Civil case terminated.

**SO ORDERED.**  ENTERED:  May 5, 2023

_____
**HON. JORGE ALONSO**
**United States District Judge**